UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.                                        CASE NO: 8:20-cr-77-T36-TGW

NATHALIA GOMEZ-IRIZARRY

### DEFENDANT NATHALIA GOMEZ-IRIZARRY'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE

The Defendant, NATHALIA GOMEZ-IRIZARRY, ("Ms. Gomez-Irizarry") by and through undersigned counsel, files this sentencing memorandum in advance of her sentencing scheduled for December 17, 2020, and respectfully moves for a variance from the sentence recommended by the United States Sentencing Guidelines, and states as follows:

### INTRODUCTION

Ms. Gomez-Irizarry pleaded guilty pursuant to a plea agreement to Count One of the Indictment charging a conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The final presentence investigation report ("PSI") reflects an advisory guideline score of 12 with an imprisonment range of 10 months to 16 months of imprisonment. Ms. Gomez-Irizarry seeks a variance based on her personal circumstances and the facts of this case.

## PERSONAL BACKGROUND AND RELEVANT HISTORY

Ms. Gomez-Irizarry is the wife of co-defendant Mr. Jose Irizarry ("Mr. Irizarry"), and the mother of their twin, five-year-old girls. She met Mr. Irizarry while studying in the United States, and they married in 2007. From 2007 to present, Ms. Gomez-Irizarry has worked outside of the home and as a homemaker for her family. Since her marriage to Mr. Irizarry, she has supported her husband in his various assignments with the United States Drug Enforcement Administration ("DEA").

Mr. Irizarry was a DEA Special Agent from on or about August 2009 through January 2018. As Mr. Irizarry's DEA career progressed, he began laundering money utilized by the DEA for law enforcement operations. As part of the money laundering conspiracy, Ms. Gomez-Irizarry's identity was used in a manner that allowed Mr. Irizarry to conduct banking activity. Also, Ms. Gomez-Irizarry was the registered owner of a Florida-based corporation utilized by Mr. Irizarry to launder money.

On paper, Ms. Gomez-Irizarry financially benefited from the conspiracy. Emotionally, she suffered greatly.

While Mr. Irizarry was traveling for DEA-related duties and the activities he conducted to further the money laundering conspiracy, Ms. Gomez-Irizarry remained at home. "Home" was not usually a physical place well known to Ms. Gomez-Irizarry but, instead, a location where Mr. Irizarry had been assigned. Ms. Gomez-Irizarry frequently did not have friends or family nearby and spent long

periods of time isolated from familial connection and her spouse. Wherever assigned, Ms. Gomez-Irizarry worked normal, lawful 9:00 a.m.-5:00 p.m. jobs. Despite her best efforts to establish and maintain a strong marriage, Ms. Gomez-Irizarry and Mr. Irizarry frequently fought. The Tiffany ring purchased by Mr. Irizarry, the subject of forfeiture in Ms. Gomez-Irizarry's plea agreement and the United States' recent motion [ECF No. 72], was Mr. Irizarry's $30,000.00 USD attempt to mend their marriage. Resolution attempts continued in the form of luxury vehicles for Ms. Gomez-Irizarry to drive and high-end real estate for their family.

When Ms. Gomez-Irizarry gave birth to her and Mr. Irizarry's twins, she did so alone. Mr. Irizarry had recently departed for his next assignment to Colombia, leaving weeks early on his own accord due to recent disagreements between he and Ms. Gomez-Irizarry. While Mr. Irizarry worked and traveled, Ms. Gomez-Irizarry raised their two small children, sometimes with the assistance of her mother but mostly singlehandedly. As Mr. Irizarry's actions broadened the conduct of the money laundering conspiracy, so too, did it broaden the emotional divide between he and Ms. Gomez-Irizarry. While the conspiracy yielded tangible benefits, it also inflicted severe emotional damage.

The indictment contains nineteen counts, mostly centering around the activities of Mr. Irizarry and his career as a DEA agent. In contrast, Ms. Gomez-Irizarry is charged with one count of money laundering.

## SENTENCING GUIDELINES

According to the PSI, the current advisory guidelines range of 10 months to 16 months was derived by calculating (a) a **Base Offense Level** of 16,[1] (b) a two-level downward adjustment for her **Role in the Offense**,[2] (c) a two-level downward adjustment for **Acceptance of Responsibility**,[3] which results in a **Total Offense Level** of 12,[4] with a **Criminal History Category** of I.[5]

Due to Ms. Gomez-Irizarry's personal history and circumstances, her role within the conspiracy, and the two minor children that she and Mr. Irizarry share, she respectfully requests that this Honorable Court consider a minor-role reduction, consider factors that may warrant departure, and consider the negotiated plea agreement and its terms that the United States and Ms. Gomez-Irizarry have amicably reached. Ms. Gomez-Irizarry respectfully requests that this Honorable Court impose a sentence of time served and probation.

## MINOR ROLE

As paragraph 57 in the PSI indicates, Ms. Gomez-Irizarry was a minor participant in the conspiracy. USSG §3B1.2(b), comment. (n. 3(C)) lists factors that the Court should consider when determining if a minor role is applicable. Those factors include: (i) the degree to which the defendant understand the scope and structure of the criminal activity; (ii) the degree to which the defendant participated

---

[1] ¶ 54.
[2] ¶ 57.
[3] ¶ 61.
[4] ¶ 62.
[5] ¶¶ 66, 67.

in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stated to benefit from the criminal activity.

As noted in paragraph 57, Ms. Gomez-Irizarry was recruited by her husband to participate in the conspiracy. There is no indication that she understood the scope and structure of the criminal activity, nor was she involved in any planning or organization of the criminal activity. Further, there was no evidence of her exercising any decision-making authority or influence over other co-conspirators within the conspiracy. When comparing Ms. Gomez-Irizarry to other co-conspirators, she is clearly substantially less culpable than the average participant; and therefore, should be afforded a two-level reduction for her minor role.

## MOTION FOR VARIANCE

Due to the personal history and circumstances of Ms. Gomez-Irizarry, she respectfully requests that this Honorable Court impose a sentence of time served and probation. As this Court is well aware, a United States District Court is no longer limited by the guidelines since the matrix is merely considered advisory. United States v. Booker, 543 U.S. 220, 245-267 (2005). The United States Supreme Court in Booker gave judges the flexibility to use the sentencing range produced by the Guidelines as a "starting point" or "initial bench mark." Gall v. United States, 552 U.S. 38, 49 (2007).

5

Moreover, in United States v. Talley, 431 F.3d 784 (11th Cir. 2005), the Eleventh Circuit adopted a two-step procedure that district courts should follow when fashioning a sentence in the post-Booker, advisory Sentencing Guidelines era. "First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines." Id. at 786. Second, the district court must consider the following ten factors: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 3) the need for deterrence; 4) the need to protect the public; 5) the need to provide the defendant with needed educational and vocational training or medical care; 6) the kinds of sentences available; 7) the Sentencing Guidelines range; 8) pertinent policy statements of the Sentencing Commission; 9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. Id. See also 18 U.S.C. §3553(a). "The weight to be accorded any given §3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006).

A variance is appropriate under 18 U.S.C. §3553. Ms. Gomez-Irizarry does not have a criminal past. She is a minor participant in the conspiracy. The crimes charged in the indictment are not crimes of violence. She is not a danger to the public. Ms. Gomez-Irizarry suffered personal and emotional hardship as a result of the conspiracy and actions of co-defendant Mr. Irizarry.

Additionally, it is appropriate for this Honorable Court to consider a further reduction based upon the familial structure of Ms. Gomez-Irizarry's family. Ms. Gomez-Irizarry and Mr. Irizarry are the parents of two minor children, both of whom Ms. Gomez-Irizarry has raised and is currently schooling from home via Zoom due to the covid-19 pandemic. Mr. Irizarry has pleaded guilty to the nineteen counts of the indictment and will undoubtedly receive a significant sentence of imprisonment. [ECF No. 59] The loss of both parents to terms of imprisonment will undoubtedly cause collateral consequences to the development of their two minor children. Incarceration is not a single event but one that unfolds over time. The simultaneous unavailability of Ms. Gomez-Irizarry and Mr. Irizarry will cause detrimental short-term and long-term effects to their two minor children.[6] It is appropriate for this Honorable Court to also consider a downward departure based on the loss of caretaking or financial support, as detailed in USSG §5H1.6 Comment 1 (B).

Finally, Ms. Gomez-Irizarry and the United States have agreed upon a sentence of probation. [ECF No. 58, ¶5] While this Honorable Court does not have to accept this term of the plea agreement, undersigned counsel respectfully highlights that this particular term was agreed upon by the United States and Ms. Gomez-Irizarry, and

---

[6] "Parental incarceration induces household instability, increases the risk of childhood homelessness, and increases dependence on public assistance," *How Parental Incarceration Harms Children NCFR Policy*, available at https://www.ncfr.org/sites/default/files/2018-01/How%20Parental%20Incarceration%20Harms%20Children%20NCFR%20Policy_Full%20Brief_Jan.%202018_0.pdf (citing social research of parental incarceration); "[I]n general, children whose parents are incarcerated are at high risk for increased antisocial behaviors and psychological problems, such as depression," *Hidden Consequences: The Impact of Incarceration on Dependent Children*, National Institute of Science Journal, available at https://nij.ojp.gov/topics/articles/hidden-consequences-impact-incarceration-dependent-children#:~:text=The%20research%20shows%20that%2C%20in,psychological%20problems%2C%20such%20as%20depression.&text=%5B33%5D%20Thus%2C%20the%20prior,of%20contact%20from%20the%20parent.

7

Ms. Gomez-Irizarry agreed to waive several of her constitutional rights and enter a plea of guilty to Count One of the indictment as a result.

## CONCLUSION

Based on the circumstances set forth above, Ms. Gomez-Irizarry requests that this Honorable Court apply a minor role reduction, grant a downward variance, and impose a sentence of time served and probation.

DATED this 15th day of December 2020.

Respectfully submitted,

*/s/ Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
rc@attorneyrebeccacastaneda.com
(813) 694-7780
The Castaneda Law Firm PLLC
506 N. Armenia Avenue
Tampa, Florida 33609-1703

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed on the 15th of December 2020 with the Clerk of the Court using the CM/ECF system which will automatically transmit an electronic copy to **AUSA Joseph Palazzo and AUSA Mark Irish**.

By:    */s/ Rebecca L. Castaneda*
Rebecca L. Castaneda
Florida Bar No. 1007926
rc@attorneyrebeccacastaneda.com
(813) 694-7780
The Castaneda Law Firm PLLC
506 N. Armenia Avenue
Tampa, Florida 33609-1703